# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Docket No. 2:17-cr-117-NT |
| ) | |
| MST MINERALIEN SCHIFFARHT ) | |
| SPEDITION UND TRANSPORT ) | |
| GmbH and REEDEREI MS ) | |
| MARGUERITA ) | |
| GmbH & Co. GESCHLOSSENE ) | |
| INVESTMENT KG, ) | |
| ) | |
| Defendants. ) | |

## ORDER ON DEFENDANTS' MOTION TO DISMISS

On August 22, 2017, a federal grand jury indicted the Defendants on nine counts. Indictment (ECF No. 1). Counts One through Eight charge the Defendants with violations of the Act to Prevent Pollution from Ships, 33 U.S.C. § 1908(a) and 18 U.S.C. § 2, and Count Nine alleges obstruction of justice under 18 U.S.C. § 1519 and 18 U.S.C. § 2. The Defendants move to dismiss Counts One through Eight for failure to state an offense against the laws of the United States under Federal Rule of Criminal Procedure 12(b)(3)(B). (ECF No. 30.) For the following reasons, the Defendants' motion is **DENIED**.

## FACTUAL BACKGROUND

For the purposes of a motion to dismiss, I take the allegations of the Indictment as true. *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n. 16 (1952). The *M/V Marguerita* is a 19,104 gross ton, ocean-going motor vessel. It is owned by Defendant Reederei MS Marguerita GmbH & Co. Geschlossene Investment-KG ("**Reederei**

**Marguerita**") and managed by MST Mineralien Schiffarht Spedition und Transport GmbH ("**MST**"), both of which are German-domiciled companies. The *M/V Marguerita* is registered by the Republic of Liberia.

Large vessels like the *M/V Marguerita* generate oily wastes called machinery space bilge water when water mixes in the bottom of the vessel with oil that has leaked from the machinery or the lubrication and fuel systems. These oily mixtures are collected, stored, and processed to separate the water from the oil and other wastes using a pollution prevention control device known as an Oil-Water Separator and an oil-sensing device known as an Oil Content Monitor. Machinery space bilge water may only be discharged overboard after this separation process ensures that most of the oil has been removed. Under international and federal pollution laws, all disposals or transfers of machinery space bilge water must be recorded in the vessel's Oil Record Book ("**ORB**").

The *M/V Marguerita's* chief engineer was responsible for tracking the generation, transfer, and disposal of oily waste from the vessel and making timely entries of these occurrences in the ship's ORB. The *M/V Marguerita's* senior engineers were responsible for maintaining the ORB on behalf of the master. When the *M/V Marguerita* entered the Port of Portland on September 14, 2016, October 13, 2016, November 11, 2016, December 8, 2016, January 10, 2017, February 14, 2017, March 16, 2017, and April 11, 2017, the Defendants, acting through their agents and employees, knowingly failed to fully and accurately maintain the ORB.[1] Specifically,

---

[1] The Defendants raised additional facts not contained in the Indictment in their motion to dismiss, and the Government, in turn, raised additional facts in its response to the motion. Because

the book failed to include "(1) transfers of machinery space bilge water into the Fresh Water Drain Tank; (2) transfers of machinery space bilge water from the Fresh Water Drain Tank into the Grey Water Tank; and (3) discharges overboard of machinery space bilge water and oil residue." Indictment ¶¶ 8, 10, 12, 14, 16, 18, 20, 22.

## LEGAL STANDARD

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment is sufficient if it: "first . . . contains the elements of the offenses charged and fairly informs a defendant of the charge against which he must defend, and, second . . . enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Resendiz–Ponce*, 549 U.S. 102, 108 (2007) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). "An indictment that tracks the language of the underlying statute generally suffices to meet this standard; provided, however, that the excerpted statutory language sets out all of the elements of the offense without material uncertainty." *United States v. Troy*, 618 F.3d 27, 34 (1st Cir. 2010) (quoting *United States v. Serino*, 835 F.2d 924, 929 (1st Cir. 1987)). Dismissal of an indictment is "an extraordinary step." *United States v. Stokes*, 124 F.3d 39, 44 (1st Cir. 1997). "When a federal court uses its supervisory power to dismiss an indictment it directly encroaches upon the fundamental role of the grand

---

the Defendants' motion is based on the inadequacy of the indictment under Federal Rule of Criminal Procedure 12(b)(3)(B), my analysis focuses solely on the allegations of the indictment and does not consider the evidence that either party represents it would prove at trial. *United States v. Curley*, No. 13-cr-58-JAW, 2014 WL 199948, at *2 n.2-3 (D. Me. Jan. 16, 2014).

3

jury. That power is appropriately reserved, therefore, for extremely limited circumstances." *Whitehouse v. U.S. Dist. Court*, 53 F.3d 1349, 1359 (1st Cir. 1995).

## DISCUSSION

### I. Statutory Framework

Congress passed the Act to Prevent Pollution on Ships ("**APPS**") to implement two international environmental treaties: the International Convention for the Prevention of Pollution from Ships, Nov. 2, 1973, 1340 U.N.T.S. 184, and the Protocol of 1978 relating to the International Convention for the Prevention of Pollution from Ships, Feb. 17, 1978, 1340 U.N.T.S. 61. *United States v. Ionia Mgmt. S.A. ("Ionia II")*, 555 F.3d 303, 306 (2d. Cir. 2009). These treaties are collectively referred to as "MARPOL," and their purpose is to "achieve the complete elimination of international pollution of the marine environment by oil and other harmful substances." 1340 U.N.T.S. at 128. MARPOL Annex 1 addresses the prevention of oil pollution, limits the oil content of discharges, and requires that transfers and discharge be recorded in the vessel's ORB.

The APPS criminalizes knowing violations of MARPOL and the regulations issued thereunder. 33 U.S.C. § 1908(a); *see also United States v. Abrogar*, 459 F.3d 430, 434-35 (3d Cir. 2006). The APPS authorizes the United States Coast Guard to "prescribe any necessary or desired regulations to carry out the provisions of . . . MARPOL." 33 U.S.C. § 1903(c)(1); *see also* 33 C.F.R. § 151.01 *et seq*.

The regulation at issue in this case, 33 C.F.R. § 151.25, is captioned "Oil Record Book." It provides that a "ship of 400 gross tons and above . . . shall maintain an Oil

Record Book" that is kept "readily available for inspection at all reasonable times." 33 C.F.R. §§ 151.25(a), (i). Under § 151.25, entries must be made in the ORB whenever there is "[d]isposal of oil residue" or "[d]ischarge overboard or disposal otherwise of bilge water that has accumulated in machinery spaces." 33 C.F.R. §§ 151.25(d)(3)-(4). These entries

> shall be fully recorded without delay in the Oil Record Book so that all the entries in the book appropriate to that operation are completed. Each completed operation shall be signed by the person or persons in charge of the operations concerned and each completed page shall be signed by the master or other person having charge of the ship.

33 C.F.R. § 151.25(h). "The master or other person having charge of a ship required to keep an Oil Record Book shall be responsible for the maintenance of such record." 33 C.F.R. § 151.25(j).

The APPS and its regulations apply to foreign-flagged vessels only "in the navigable waters of the United States, or while at a port or terminal under the jurisdiction of the United States." 33 C.F.R. § 151.09(a)(5); *see also* 33 U.S.C. § 1902(a)(2). For violations of the treaties that occur in international waters, the country that has registered the ship, also known as the flag state, is responsible for enforcement of the law. *Ionia II*, 555 F.3d at 308.

## II. Analysis

The Defendants present a multifaceted argument that the Indictment should be dismissed. They first make a jurisdictional/vicarious liability argument that they cannot be prosecuted for the wayward acts of the *M/V Marguerita's* chief engineer committed on the high seas. They next contend that the Indictment failed to plead a

5

factual predicate for an element of "presentation." Finally, they argue that the rule of lenity should apply since this is a novel application of the law, and they claim that their due process rights have been violated because they did not have notice that their conduct violates the law. I consider each argument in turn.

A.  **Jurisdiction and Corporate Liability**

The Defendants' first argument begins with their claim that under 33 C.F.R. § 151.25, only the master of the ship is responsible for maintaining the ORB. The Defendants claim that Counts One through Eight of the Indictment fail to charge offenses against the laws of the United States because it was the chief engineer's conduct on the high seas which caused the ORB to be inaccurate and not the master's failure to maintain the ORB within the territorial waters of the United States.[2] The Defendants, relying heavily on *United States v. Fafalios*, argue that because the chief engineer has no obligation to maintain the ORB in territorial waters,[3] they, as corporate entities, can have no vicarious liability. *See United States v. Fafalios*, 817 F.3d 155, 161-62 (5th Cir. 2016). Further, although the Defendants acknowledge that the chief engineer could be charged with aiding and abetting the master's failure to maintain the ORB, they claim that this aiding and abetting culpability should not extend to them. Layering the concept of corporate vicarious liability atop the aiding

---

[2]  This factual assertion is not contained within the Indictment.

[3]  The chief engineer could be prosecuted in the United States for his own failure to record a discharge only if that failure occurred within United States' waters. *United States v. Fafalios*, 817 F.3d 155, 158 (5th Cir. 2016). The Defendants claim that Liberia, as the *M/V Marguerita's* country of registration, has "primary, if not exclusive jurisdiction" over this alleged MARPOL violation because the failure to record occurred on the high seas.

6

and abetting liability of the chief engineer goes too far in their view. Finally, they claim that aiding and abetting in this context makes no sense because, if they are responsible for all acts that are within the scope of the employee's duties and committed for the benefit of the employer, then they would be aiding and abetting themselves.

My analysis begins with the plain language of 33 C.F.R. § 151.25. Under § 151.25, the maintenance of the ORB is mentioned twice:

> (a) Each . . . ship of 400 gross tons and above . . . shall maintain an Oil Record Book Part I (Machinery Space Operations).
>
> . . . .
>
> (j) The master or other person having charge of a ship required to keep an Oil Record Book shall be responsible for the maintenance of such record.

33 C.F.R. § 151.25(a), (j). This regulation expressly applies to foreign-flagged vessels in the navigable waters and ports of the United States. 33 C.F.R. § 151.09(a)(5). Under a plain reading of these regulations, a foreign-flagged ship has a duty to maintain an ORB upon entry into the navigable waters of the United States. Courts that have addressed this regulation have agreed that § 151.25 "imposes a duty on ships, upon entering the ports or navigable waters of the United States, to ensure that its ORB is accurate (or at least not knowingly inaccurate)." *Ionia II*, 555 F.3d at 308 (adopting *United States v. Jho*, 534 F.3d 398, 403 (5th Cir. 2008)).

The Defendants claim that only the ship's master can be criminally liable for failing to maintain an ORB, but the cases cited by both sides support the proposition that the Government is not limited to charging only the master when a ship with an

7

inaccurate ORB comes into a port in the United States. While it can bring a criminal prosecution against a master, *Fafalios*, 817 F.3d at 160, it can also bring a criminal prosecution against a chief engineer under an aiding and abetting theory. *See id.* at 162*; Jho*, 534 F.3d at 402 n.2. Most importantly, it can bring a criminal prosecution against the ship owners or operators. *See Ionia II*, 555 F.3d at 306 (ship management company); *Jho*, 534 F.3d at 403 (owner); *United States v. Petraia Mar. Ltd.*, 483 F. Supp. 2d 34, 38-39 (D. Me. 2007) (owner); *United States v. Sanford Ltd.*, 880 F. Supp. 2d 9, 14, 18 (D.D.C. 2012) (owner/operator).

The Indictment alleges that Defendant Reederei Marguerita owned and Defendant MST operated the *M/V Marguerita*, and that the actions of the crew were done within the course and scope of their employment on behalf of and for the benefit, at least in part, of MST and Reederei Marguerita. As such, the Indictment charges, under a theory of corporate criminal liability, that the Defendants violated the regulation requiring that a ship maintain an accurate ORB within the territorial waters of the United States. In *Ionia II*, the Second Circuit rejected the arguments of the management company for the *M/V Triton* that it should not bear corporate criminal liability for failing to maintain an accurate ORB within the territorial waters of the United States. *Ionia II*, 555 F.3d at 309. In doing so, the Second Circuit applied standard principles of corporate criminal liability—whether the management company could be criminally liable for the conduct of employees acting within their authority to benefit the company. *See id.* The First Circuit applies the same principles of corporate criminal liability that were used in *Ionia II*. *See United States v. Potter*,

8

463 F.3d 9, 25-26 (1st Cir. 2006) (corporation may be criminally liable where "agent is 'performing acts of the kind which he is authorized to perform,' and those acts are 'motivated—at least in part—by an intent to benefit the corporation.' ") (quoting *United States v. Cincotta*, 689 F.2d 238, 241-42 (1st Cir. 1982), *cert. denied*, 459 U.S. 991 (1982)).

The Defendants cling to *Fafalios,* which held that a chief engineer, who was responsible for an unrecorded oily discharge in international waters, could not be prosecuted for a failure to maintain an ORB under 33 C.F.R. § 151.25. *See Fafalios*, 817 F.3d at 161-62. The government in *Fafalios* charged the chief engineer in his individual capacity with the substantive violation of failing to maintain an ORB. *Id.* at 158. In addressing whether a chief engineer had the duty under 33 C.F.R. § 151.25 to maintain the ORB, the Fifth Circuit concluded that only the master could be liable for failing to maintain the ORB. *Id.* at 162. Critically, the government in *Fafalios* did not charge the owners or operators of the ship, and the holding of the case does not extend to organizational defendants. Although *Fafalios* may take a chief engineer off the hook for a substantive failure to maintain an ORB charge, it does nothing to take the ship or its owners off the hook. In fact, the Fifth Circuit specifically noted that "the ship itself may be held liable *in rem* for any violation of the regulations," and it did not address the potential criminal liability of the owners or managers of the ship. *Id.* The Defendants, in focusing on *Fafalios* and the inapposite question of whether a chief engineer can be liable absent an aiding and abetting charge, offer no authority

9

which casts any doubt on the Government's ability to charge a ship owner or operator criminally for the conduct alleged in this Indictment.

### B. The "Presentation" Element

The Defendants also argue that the Indictment is defective because it contains no allegation that the Defendants "presented" a knowingly false ORB when the *M/V Marguerita* entered the Port of Portland. Defs.' Mem. in Support of Mot. to Dismiss 17 (ECF No. 30-1) ("**Defs.' Mem**"); Defs.' Reply 8 (ECF No. 44). For support, the Defendants cite to *Ionia I*, which was based on the "presentation of a false Oil Record Book to the Coast Guard." *See United States v. Ionia Mgmt. S.A. ("Ionia I")*, 498 F. Supp. 2d 477, 485 (D. Ct. 2007). But just because there was a "presentation" in *Ionia I*, does not mean that a prosecution cannot be based on the possession of an inaccurate ORB within the territorial waters of the United States without an actual presentation to the Coast Guard. The plain language of the regulation requires the ship "to maintain" the ORB. 33 C.F.R. § 151.25(a). The term "maintain" as used in § 151.25 has been interpreted as "to keep in a state of . . . validity." *Ionia II,* 555 F.3d at 309 (quoting Webster's Third International Dictionary, Unabridged (2002)). Under the plain meaning of the regulation, I fail to see a presentation requirement.

Furthermore, in *Petraia,* a judge of this District expressly rejected the argument that the indictment was insufficient because it did not charge the defendant vessel owner with "presenting" the ORB or holding it out as inaccurate. 483 F. Supp. 2d at 40. Indeed, the *Petraia* opinion noted that the emergence of evidence that the ORB had been seized rather than "presented" was not pertinent to

10

the question of whether the indictment was sufficient. *Id*. I see no reason to decide otherwise.

An adequate indictment states the elements of the charged offense. *See Resendiz–Ponce*, 549 U.S. at 108. Because the requirement that the ORB be "presented" to the Coast Guard is not contained in 33 C.F.R. § 151.25 and because I see no reason to imply such an element, this argument fails.

### C. Statutory Ambiguity: Lenity and Due Process

Finally, the Defendants argue that the rule of lenity applies and that this would be such a novel application of the law that it would deny them notice that their conduct could be subject to criminal sanctions. Defs.' Mem. 19; Reply 9. The Government responds that "the right of the Coast Guard to board a vessel and inspect the log is well-established in maritime law, and the consequences of misrepresenting pollution discharges—regardless of the applicable statute—cannot be said to be so unclear as to mandate lenity." Gov't's Opp'n 15 (quoting *United States v. Royal Caribbean Cruises Ltd.*, 11 F. Supp. 2d 1358, 1366 (S.D. Fla. 1998)).

Under the rule of lenity, if a statute is ambiguous, courts must draw all inferences in favor of the defendant. *United States v. Nippon Paper Indus. Co.*, 109 F.3d 1, 7 (1st Cir. 1997). However, "a statute is not ambiguous for this purpose simply because some courts or commentators have questioned its proper interpretation." *Id.* at 8. Here, the Defendants fail to identify an ambiguity or to cite to a case finding an ambiguity in 33 U.S.C § 1908(a) or 33 C.F.R. § 151.25. Rather, the case cited by the Defendants involves the ambiguity about the meaning of the term "cargo related oil residue" under the discharge rules, 33 C.F.R. § 151.10(c), a complexity not at issue

11

here. *See United State v. Apex Oil Co., Inc.*, 132 F.3d 1287, 1289 (9th Cir. 1997). I find that the statute and regulation provide fair warning with respect to the failure to maintain violation, and the rule of lenity does not apply. *See Ionia I*, 498 F. Supp. 2d at 487. For similar reasons, I conclude that this is not a "novel" application of the law that that would impose on the Defendants' due process rights.

## CONCLUSION

For the reasons stated above, the Court **DENIES** the Defendants' motion to dismiss.


SO ORDERED.

/s/ Nancy Torresen
United States Chief District Judge

Dated this 22d day of January, 2018.