**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 2:17-cr-00117-NT |
| ) | |
| MST MINERALIEN SCHIFFAHRT ) | |
| SPEDITION UND TRANSPORT ) | |
| GMBH ) | |

**GOVERNMENT'S RESPONSE**
**TO MOVANTS' MOTION FOR APPS AWARD**

The United States, by and through undersigned counsel, respectfully submits this response to Movants' Motion for Relief and an Award Pursuant to 33 U.S.C. § 1908(a). For the reasons set forth below,[1] the government recommends that the Court not grant any award or to limit the award only to Jaroslav Hornof, one of three movants employed aboard defendant's M/V *MARGUERITA*, a Liberian registered commercial vessel.[2] In the event that the Court grants Mr. Hornof an APPS award, then the government respectfully submits that it should take into account that he did not notify the government, and limit the award to less than the 50 percent maximum authorized.

---

[1] The government has sought leave to file a Government's Factual Appendix with supporting citations and exhibits. The exhibits also contain certain documents requested by movants.

[2] At sentencing, the Court indicated that it was inclined to view only one of the witnesses, Jaroslav Hornof, as potentially qualifying for an APPS award. The United States agrees and addressed this issue in its sentencing memorandum and response to the movants motion to be declared crime victims and thus, we have not addressed herein the renewed claims of Messrs. Zak and Kordic. Neither of these individuals reported the crimes and both were participants. Similarly, this response does not address the spurious and legally unsupported claims by the movants that: (1) the court should grant each movant an amount equal to half of the APPS fine resulting in an amount that would total more than the statutory maximum permitted; and (2) that the Court should grant the movants an award from the fine apportioned to the obstruction count.

Movants' pending motion does not address an issue raised by the government at the sentencing concerning the apparent effort of movants' counsel, to take a contingency fee from any award that this Court might grant. Because there is no pending motion concerning the contingency fee, and because of the page limit for this opposition, the government is filing a separate motion. Following the First Circuit decision in *U.S. v. Overseas Shipholding Group, Inc.*, 625 F.3d 1 (1st Cir. 2010) ("OSG") (finding an APPS contingency fee to be unreasonably excessive but not unethically excessive) and the decision in *U.S. v. Efploia Shipping Co., S.A.*, D.Md., No. 1:11-cr-00652-MJG Doc. 80 (April 25, 2016), and the reasons therein, the government recommends that the Court prohibit any contingency fee because it would be contrary to the goals of APPS and unethically excessive, or at least unreasonably so.

## **Discretion to Grant an APPS Award**

The criminal penalty provision in APPS authorizes payment of an award to a person giving information leading to a conviction: "In the discretion of the Court, an amount equal to not more than ½ of such fine may be paid to the person giving information leading to conviction." 33 U.S.C. § 1908(a). In so doing, Congress did not intend that any person meeting this standard should receive an award. Rather, Congress left the decision to the Court's discretion taking into consideration all of the facts.

APPS is the domestic law that implements two international law treaties together referred as MARPOL 73/78, an international treaty to which the United States is a party. The goal of MARPOL is nothing less than the "complete elimination of all intentional pollution of the marine environment." MARPOL Preamble.

APPS does not specifically restrict awards to persons that did not report directly to the government as is the case in SEC context.[3] However, except in very unusual cases, that is clearly what was envisioned and that is what has happened in the vast majority of prior APPS prosecutions. In *U.S. v. Overseas Shipholding Group, Inc.*, 625 F.3d 1 (1st Cir. 2010) the First Circuit observed that "[t]he whole purpose of the discretionary award to whistleblowers under this statute is to create incentives for the whistleblower to take risks that may disadvantage the whistleblower in relationship to his employer." *Id*. at 9. This statutory goal can best be achieved by placing emphasis on recognizing those that inform the government about crimes that would otherwise go undetected since only the government has the prosecutorial authority to charge violations that result in monetary penalties. APPS provides for felony prosecution of knowing violations which thereby provide specific and general deterrence.

The award provision has served a valuable law enforcement purpose and helped to benefit mariners who have risked their livelihood to report this crime to the government. The government's success in identifying the activity and obtaining sufficient evidence to support investigations and prosecutions is partly based upon the willingness of lower level crew members not only to report crime, but to continue to cooperate during the investigation and prosecution. A monetary award both rewards the crew member and has the potential to encourage others to step forward. Similarly, the award provision acts a deterrent to unscrupulous vessel owners and operators knowing that crewmembers have an incentive to report illegal acts to the government.

---

[3] *See* 15 U.S.C. § 78u-6(a)(6) a "whistleblower" is defined as "any individual who provides…information relating to a violation of the securities laws *to the Commission*, in a manner established, by rule or regulation, by the Commission." *See also Digital Realty Trust, Inc. v. Somers*, 138 S.Ct. 767 (2018) (emphasis added).

## Facts

Mr. Hornof was apparently motivated by his opposition to the criminal conduct and is not known to have participated in any illegal discharges aboard this vessel. Doc. 67, 9-25. It is undisputed that the information and evidence he provided to his employer, and which was subsequently obtained by the United Sates, formed the basis for the charges in the indictment and that it was a key to obtaining a conviction. Accordingly, the government agrees with the characterization in paragraph 10 of the Movant's motion. [Doc. 169]. When the Coast Guard learned that the third engineer that had made an internal report to the company was aboard the vessel in Portland, inspectors sought him out for questioning. Prior to this time, Mr. Hornof had taken no affirmative action to contact the government. He was nevertheless very cooperative and continued to be helpful during the continuing inspection that lasted several days. Doc. 67.

However, Mr. Hornof did not to report to the government prior to the ship's arrival in Maine and made no self-initiated report once the ship arrived. Based on its communications with him, the company believed he would remain local and not report to the Coast Guard. An internal email from MST Superintendent to MST Managing Director stated that Hornof "has no intention to report to the U.S. Coast Guard[s]." Exhibit ("Ex.") 1. The email continued, "He … remains loyal, but Green oriented." *Id*. Mr. Hornof's statements to the Coast Guard in Portland confirm his original intention to protect the company. *Id*. In his deposition, Mr. Hornof stated that he was inclined to hide the violations since the problem had been corrected. Doc. 67, at 84. In summary, the evidence shows that Mr. Hornof had no intent to report the crimes to the government, but did cooperate once he was approached and asked questions the Coast Guard.

His decision not to notify the government is particularly troubling because his employer was a recidivist on probation for essentially the same crimes. The Coast Guard was seriously

disadvantaged by not having his specific information prior to the ship's arrival. Had the government or Court in Minnesota known the full nature and extent of the evidence instead of a misleading and self-serving summary provided by MST, it could have prevented the ship from entering port or sought to violate the defendant's probation in Minnesota.

Despite his early and significant cooperation during the Coast Guard inspection, Mr. Hornof ceased to cooperate as soon as he came to be represented by Edward MacColl, who was present during portions of the Coast Guard inspection as a representative of the owner, operator and insurers, but was eventually retained to represent all of the crewmembers including Mr. Hornoff. As the record reflects and the Court has recognized, the movants and their counsel sought to frustrate the investigation and prosecution in numerous ways and in numerous pleadings. Accordingly, the government disagrees with paragraph 14 of the motion alleging that Mr. Hornof (and the other movants) "fully and completely cooperated" with the government's subsequent investigation.

## Analysis

The government respectfully submits that the following facts and reasonable inferences based on those facts provide a basis for the Court to: (a) not grant Mr. Hornof any award; or (b) to significantly limit the amount of that award.

1. Mr. Hornof did not report to U.S. authorities, but responded to questions once the Coast Guard initiated an inspection. He did not see the need to tell the government or seek to aid a criminal prosecution, admitting that that he would not have made any report to law enforcement since the environmental problem had been resolved. Doc. 67, at 27. MST understood that Hornoff was loyal and would not report the crimes to the Coast Guard. Ex. 1.

2. Mr. Hornof has already been compensated by MST and given a $20,000 bonus reward for reporting internally. Sentencing Transcript at 6 (September 6, 2018).

3. Mr. Hornof's decision not to report directly to the government enabled MST to selectively disclose certain facts, and apply for non-prosecution under the Coast Guard's voluntary disclosure policy prior to the ship's arrival in Portland, Maine. Doc. 30-7. Had the Coast Guard granted this request based on the incomplete disclosure, the true facts may never have become known or referred for criminal prosecution. Additionally, by not reporting directly to the government, certain evidence was lost and never retrieved. For example, Hornof took samples that were never obtained by the government; the offending Chief Engineer (Babarovic) as well as other engineers departed the vessel before arriving in the U.S.; and oil contaminated tanks were cleaned prior to arriving in the U.S. that would have provided physical evidence proving the criminal conduct.

4. Mr. Hornof did not report the crimes to the authorities in Canada or Brazil, both which could have detained the vessel and/or arrested the Chief Engineer and taken civil and/or criminal enforcement action against the owner/operator.

5. When questioned by the Coast Guard on board the ship in Portland, Mr. Hornof indicated that his decision not to report to the Coast Guard was intentional, though he apparently thought that MST would do so and expressed frustration that it had not. Ex. 8-12. Mr. Hornof stated to the boarding officers that perhaps he should have reported to the Coast Guard because the company had not been responsive to him. Ex. 12.

6. Mr. Hornof engaged in numerous uncooperative acts by and through his attorney, including but not limited to: filing pleadings alleging that the government had acted illegally; contesting U.S. jurisdiction; that he had no evidence of a U.S. violation; refusing to voluntarily remain in the United States thus necessitating the filing of material witness; filing multiple challenges to the material witness warrant; filing motions seeking pre-indictment rule 15 depositions before any defendant was charged or provided discovery; filing multiple motions to quash his trial subpoena; linking financial payment to his willingness to return for trial; and challenging both plea agreements.

7. During his sworn and immunized testimony, Mr. Hornof refused to answer government questions regarding other vessels or other individuals. Doc. 67 at 12.

8. In his deposition testimony given on September 11, 2017, Mr. Hornof admitted he was trying to keep the illegal conduct a secret: "I was trying to hide it because I said, well, why would we admit it now; we can clean up everything; we do everything properly and nobody needs to know." Doc. 67, at 121.

9. After the Court rejected the first plea agreement, Mr. Hornof requested through counsel assurance that he would receive a financial payment or an award thereby undermining his credibility at trial. *See, e.g.,* Exs. 18-19.

There are several factors that distinguish this case from the bulk of whistleblower cases. Most crewmember witnesses have done the following, none of which Mr. Hornof did: (1) report directly to the government without delay; (2) continue to cooperate throughout the investigation and prosecution; (3) voluntarily remain in the United States during the pendency of the investigation to both continue to cooperate and in order to help secure a prompt trial or settlement by their continued availability; (4) make themselves freely available to prepare for testimony in grand jury, Rule 15 depositions and trial; and (5) answer all questions truthfully regardless of whether it reflects poorly on themselves or others.

As noted above, this opposition does not address the merits of movants Zak and Kordic. However, the government observes that the arguments advanced in their favor would result granting an APPS award to a large number of mere witnesses in every maritime prosecution, including even cooperating defendants.

Just as it is true that the information and evidence provided by Mr. Hornof was important to achieving a conviction, his refusal to provide firm assurance that he would be available as a trial witness seriously undermined the government's settlement posture and confidence in taking the case to trial. This was not lost on MST's counsel. The ultimate result in the case reflects many factors, but it is possible that a different outcome may have resulted if Mr. Hornof had fully cooperated in the investigation and prosecution.

Granting a full award to Mr. Hornof would send an adverse message to the maritime industry and seafaring community that could undermine a principle way in which this crime is brought to justice. The best message that the Court could send is that to be favorably (or at least most favorably) considered for an APPS award, the report must be made to law enforcement before (or at the same time) it is brought to the company's attention, and that failure to notify the

government may be an adverse factor. Failure to encourage reporting to the government could undermine the environmental goals of APPS and MARPOL.

Defendant MST's counsel, whose practice focuses on precisely this type of prosecution, has previously argued against whistleblower awards in other cases on the basis that the whistleblower did not report to the company. *See, e.g., U.S. v. MST Mineralien Schiffahrt Spedition und Trasport GmbH, D.*, D.MN, No. 16-cr-00134-JNE-LIB, Doc. 70. There is a small bar of criminal defense lawyers advising and defending similar cases that have advanced the same argument. A ruling by this Court that grants any award to Hornof, let alone the maximum, has the potential to have an adverse impact because it will be used to suggest that crewmembers should not inform the government or engage in the type of unhelpful conduct that took place in this case.

## Conclusion

Mr. Hornof made an internal report and did not seek to notify the United States of deliberate and serious violations of the law. Once contacted by law enforcement, he provided truthful and helpful information, but this was then undermined by numerous acts. Accordingly, the United States recommends that the movants motion for an APPS award be denied. Alternatively, if the Court grants some award to Mr. Hornof, then the government recommends it be a modest amount and expressly linked to the fact that he did not make a report to law enforcement.

//

//

        Respectfully submitted,

        HALSEY B. FRANK
        UNITED STATES ATTORNEY

        JEAN E. WILLIAMS
        DEPUTY ASSISTANT ATTORNEY GENERAL
        United States Department of Justice
        Environment and Natural Resources Division

Date:   November 16, 2018        */s/ Richard A. Udell*
        Richard A. Udell
        John D. Cashman
        Trial Attorneys, Environmental Crimes Section
        601 D St. NW
        Washington, DC 20009
        (202) 307-0594
        richard.udell@usdoj.gov
        john.cashman@usdoj.gov

## CERTIFICATE OF SERVICE

    I hereby certify that I have filed the foregoing Motion for Leave to File Factual Appendix and Attachments with the Clerk of Court and all counsel of record via the Court's ECF system.

Date:  November 16, 2018        */s/ Richard A. Udell*
        Richard A. Udell
        Environmental Crimes Section
        United States Department of Justice