UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

...........................................
UNITED STATES OF AMERICA  .
                          .
                          .   CASE No.: 2:17-cr-00117-NT
                          .
v.                        .
                          .
MST MINERALIEN SCHIFFAHRT .
SPEDITION UND TRANSPORT GMBH, *et al.*, .
                          .
*Defendants*              .
...........................................

## OBJECTION OF JAROSLAV HORNOF, DAMIR KORDIC AND LUKAS ZAK TO MOTION TO PROHIBIT CONTINGENT FEE

NOW COME Damir Kordic of Croatia, Jaroslav Hornof of the Czech Republic, and Lukas Zak of the Slovak Republic (collectively, the "Crewmen") and object to the government's Motion to Prohibit Contingent Fee (the "Motion").

Relying on cases denying counsel's "applications" for excessive contingent fees for "piggybacking" on section 1908 awards made *on the government's motions*, the pending Motion argues that *if* the Crewmen recover an award *over* the government's objection, the government and the Court should restrict the Crewmen's right to compensate their attorney. The government argues that a seafarer has "special status as a ward of the Court" – so the government should protect the Crewmen from compensating their attorney – even though the government also argues the Crewmen should receive no award. The Crewmen object because:

1. The Motion improperly interferes with the Crewmen's confidential attorney-client relations;

2. The government lacks standing;

3. The Motion is based on false assertions and is at odds with the controlling First Circuit decision the government cites; and

4. The Motion and the government's other filings and actions describe an unfortunate effort to punish those who advocate against unnecessarily abridging the basic human rights and liberties of foreign seafarers and who instead encourage MARPOL enforcement via the efficient international cooperation the treaty itself mandates.

**FACTUAL BACKGROUND**

The following recitation is limited to preserve confidences.

The Crewmen are genuinely grateful for the diligent work of their attorneys in getting them home expeditiously, in trying to limit the disruption the case had on their lives, in trying to win for them fair section 1908 awards, and in protecting the basic human rights of the Crewmen for their benefit and for the benefit of other seafarers who will follow. All three Crewmen – and all nine seafarers detained off the Marguerita – got home much more quickly than other seafarers detained as human collateral in the government's extra-judicial, security agreement scheme.

The pending motion, like the government's two motions to force the seafarers to accept replacement counsel, reflect the government's desire to punish seafarers *and attorneys* who seek to protect seafarers' basic human rights. After withdrawing the first of its two conflict motions, the government promptly filed a second motion, saying that the first had been withdrawn to present the issue to the "Chief Judge of the Court." That second motion was finally resolved by the Court at hearings on August 24, 2017 and in the subsequent Memorandum Decision on Motions to Dissolve Material Witness Warrants, Motion for Conflict Counsel, Motion to Quash, and Motion for Return of Property, captioned in 17-mj-154; 17-mj-174; 17-mj-184; 17-mj-185; 17-mc-192; and 17-mc-199. The Court explained that following the August 24, 2017 evidentiary hearing, "I orally granted the Conflict Motion to the extent that I questioned each of the material witnesses under oath, and otherwise denied it, determining that no actual or apparent conflict existed." (November 2017 Decision, p. 3.) The Court also "note[d] that throughout the course of this case, each of the four witnesses has appeared before me and has been zealously represented by Attorney MacColl, without any apparent conflict." (*Id*. p. 7.) The Court

explained the government's argument that a conflict might arise if one Crewman was called to testify in a criminal proceeding against another because the Court "confirmed at hearing that each witness had been granted use immunity from prosecution . . . [and that] in its motion, and at hearing, the government failed to advance any reason to assume that any of the material witnesses was a potential future target." (*Id*. p. 8.) "Most importantly, Attorney MacColl's work in this case demonstrated his pursuit of his clients' interests." (*Id*. p. 9.)

Finally, the assertions in the motion that the Crewmen "ceased cooperation" with the United States when represented by counsel is simply false as detailed in the Crewmen's reply. In short, their cooperation continued, but so did effort to protect their basic human rights. Counsel both demanded those rights, but also facilitated cooperation. Counsel arranged every meeting and appearance the government requested (although many of those meetings and appearances were cancelled, but always by the government).

## DISCUSSION

### I. The government lacks standing.

"Standing is a threshold issue in every federal case." *Berner v. Delahanty*, 129 F.3d 20, 23 (1st Cir. 1997). It bears directly upon a court's power to adjudicate a dispute. *Id*. A litigant will be permitted to raise a third party's rights only when three criteria are met: the third party has suffered a constitutional injury in fact, the litigant enjoys a close relationship with the third party, and an obstacle exists to the third party assertion of his or her own rights. *IMS Health Inc. v. Ayotte*, 550 F.3d 42, 49 (1st Cir. 2008); s*ee Powers v. Ohio*, 499 U.S. 400, 410-11, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991).

In the federal court system, the traditional standing notion requiring an "injury in fact" has been interpreted to mean that only a client has standing to complain about the lawyer's representation. *See, e.g., In re Yarn Processing Patent Validity Litigation*, 530 F.2d 83 (5th Cir.

1976); *Colyer v. Smith*, 50 F. Supp. 2d 966 (C.D. Cal. 1999). Although Supreme Court precedent allows government prosecutors charged with enforcing laws restricting attorney fees to "argu[e] for the validity of a law on which the prosecution [to prevent unethical fees] is based," *United States Dep't of Labor v. Triplett*, 494 U.S. 715, 719 (1990), no law gives any agency or the government lawyers appearing before the Court the right to regulate the Crewmen's relations with their counsel.

To the contrary, in affirming this Court's decision that the Crewmen lacked standing to object to plea agreements designed to preclude section 1908(a) awards, the First Circuit explained, "There is no statutory authority in 33 U.S.C. § 1908(a) or elsewhere that provides them the right to be so heard." (Document 28 in 18-mc-127-NT.) Similarly, nothing in section 1908(a) or elsewhere provides these government lawyers the right to be heard concerning the Crewmen's right to hire or compensate their chosen lawyers.

**II.       The Court should not interfere with the Crewmen's attorney-client relations.**

The Court, of course, has "inherent authority" to regulate private fee agreements for handling matters before it – but even the Court may reduce a privately-agreed fee "only in exceptional circumstances." *United States v. Overseas Shipholding Group, Inc.*, 625 F.3d 1 (1st Cir. 2010). That authority exists in "exceptional circumstances" because the "district court has inherent authority to supervise the conduct of attorneys that appear before it." *Id*. at 8. But that "inherent authority" rests with the court – not with the government. "This is so because *'[c]ourts have a stake* in attorney's fees contracts; the fairness of the terms reflects directly on the court and its bar.' Thus, *a court 'has a particular interest* in assuring itself that it is not an unwitting accessory to an excessive fee." *United States v. Overseas Shipholding Group, Inc.*, 625 F.3d at 9[emphasis added], quoting *Rosquist v. Soo Line R.R.*, 692 F.2d 1107, 1111 (7th Cir. 1982) and *Farmington Dowel Products Co. v. Forster Mfg. Co.*, 421 F.2d 61, 87 (1st Cir. 1969).

Nothing in *Overseas Shipping Group* suggests that a party, including the government, should be heard to generate a fee dispute where none exists. The Crewmen respectfully submit that, instead, the government's ongoing effort to interfere with the Crewmen's attorney-client relations is particularly *inappropriate* – and is part of the government's effort to discourage future seafarers and their lawyers from challenging the practice of demanding and posting human collateral for the release of ships. As counsel and the Crewmen previously explained, the government's two motions to appoint conflict counsel and to disqualify the Crewmen's preferred attorney were "capable of being abused for tactical purposes, and …[courts] are justifiably wary of this type of strategic maneuvering." *Morin v. Me. Education Association*, 993 A.2d 1097, 1099; *Casco N. Bank*, 667 A.2d at 859. The same is true of the current motion.

Indeed, and with all possible respect to government counsel, it is difficult to attribute any good faith motives to the pending motion. The government suggests it wants to ensure the Crewmen receive as much of their award as possible. At the same time, however, the government argues the Crewmen should receive *nothing*, and the government has gone to extraordinary lengths to preempt and (when that effort failed) to limit the Court's discretion to make an award. MST's counsel had confirmed[1] – and the government does not dispute – the assertion contained in the Crewmen's pending motion for section 1908 awards that MST offered to plead guilty to – and to allocate the agreed $3,200,000 fine among – a sufficient number of the APPS counts (as well as the obstruction count) so that no one count's fine would exceed the $500,000 statutory cap. The only plausible reason for the government's refusal to accept

---

[1] To the extent the Court may have suggested at the September 6 hearing that counsel's communications with MST's attorney are somehow improper, counsel respectfully disagrees. Counsel has attempted throughout to gather information important to these Crewmen (about scheduling, potential plea agreements, the prospect that a better, seafarer-friendly method of enforcing MARPOL, and many other matters) by a variety of methods and from a variety of sources, including the DOJ lawyers, the U.S. Attorney's office, the clerk's office and defense counsel. All such efforts and communications have been appropriate and ethical. Under Federal Rule of Evidence 410, plea discussions and agreements are inadmissible against a defendant for most purposes, but nothing in the rule and no legal principal precludes counsel for witnesses and alleged victims from asking about plea discussions that may be (and in this case were) designed to damage the witnesses unfairly.

*additional* guilty pleas is that the government sought to limit the Court's discretion and authority to make fair awards. The government has not disputed that such was its purpose.

Finally, the Crewmen are grateful they benefitted from successful lawyering. The Court acknowledged at the presentence conference that the Court's "gut on [the Crewmen's attack on the plea agreement] is I have . . . never heard of a situation where a plea agreement is being collaterally attacked by somebody outside the Government and the defendant. So I suppose it is possible. . ." [August 7 Transcript, p. 7.] The Crewmen thank the Court for ultimately doing what it "had never hear of."

The following is a short summary of counsel's so-far uncompensated services. Not all were successful, and of course the Crewmen are not assured of an award. But then counsel will be paid nothing absent a recovery:

- Attempting to liberate the Crewmen from the unprecedented burden of being under subpoena for a full year after the first trial continuance;

- Arranging for witness fees they received (and that counsel cashed with personal funds);

- Arranging their transportation, scheduling meetings with government counsel and appearance for the scheduled May trial;

- Objecting to the last minute May plea agreement designed to preclude section 1908 awards;

- Submitting extensive filings asking this honorable Court to establish new law treating crew members pledged as collateral for the release of vessels to be victims of the offenses for which those vessels are liable in rem;

- Housing the Crewmen at counsel's house and arranging alternative flights after the government pressed (by hurriedly scheduling their return flights and cancelling their hotel) to force them out of the country; the arrangement allowed the Crewmen to prepare affidavits to upset the unfair May plea agreement and remain available for cross-examination should any party question their affidavits;

- Helping to convince the Court that the May plea agreement was indeed unfair;

- Unsuccessfully but diligently petitioning the First Circuit concerning the victim status of seafarers pledged as substitute human collateral for vessels liable in rem for criminal fines;

- Coordinating the Crewmen's scheduled return in November;

- Advancing costs to Mr. Kordic who could not afford to pay the application fee required to secure the visa needed to honor his subpoena obligation and make himself available for trial;

- Preserving for all of them a fighting chance to receive section 1908 awards notwithstanding the government's and MST's unfortunate agreement designed to limit any award;

- Responding to the government's voluminous pleadings and "Factual Record" in opposition to a just award (that last response will be filed shortly); and

- Working to make MARPOL enforcement fairer for their fellow seafarers so that others might not be detained without process, pledged as human collateral for vessels, and driven out of their chosen profession, as these (former) mariners were.

## CONCLUSION

For all of the foregoing reasons, the Crewmen respectfully submit that the required "exceptional circumstances" to review their fee agreement do not exist, that it would be particularly inappropriate to intervene in their confidential relations over their objection and at the request of an opposing party and that, accordingly, the government's motion should be denied.

Respectfully submitted this 5th day of December 2018.

      /s/ Edward S. MacColl
Edward S. MacColl BRN 2658
Attorney for Damir Kordic, Jaroslav Hornof,
and Lukas Zak

THOMPSON, MACCOLL & BASS, LLC, P.A.
15 Monument Square
P.O. Box 447
Portland, ME 04112-0447
(207) 774-7600

## CERTIFICATE OF SERVICE

I certify that that the forgoing filing was filed via the Court's Electronic Court Filing System, which will cause the filing to be served on all parties and all counsel of record.

      /s/ Edward S. MacColl
Edward S. MacColl